Metcalf, J.
This is an action on an award purporting to be made in pursuance of a submission to three arbitrators of “ all matters and things whatsoever, arising out of the will and estate of Peleg Tallman,” (the father of the parties,) “ and the just and equitable division thereof, as also any promise, agreement, or contract alleged to have been made by” the defendant to the plaintiff, “ touching the settlement of said estate, and all demands between the parties relating thereto.” There were also these provisions in the submission; namely, that the arbitrators should have power to award as to costs; that their award should be drawn out by them in writing, and a copy thereof furnished to each of the parties, in a reasonable time after the arbitrators should have made up the same ; and that the arbitrators should fix the terms and times of payment, and the forms of all releases.
The arbitrators, after reciting that they had met and fully heard the parties to the agreement of submission, their several proofs, evidence, and arguments, and maturely considered the *332 same, “ award and determine that said Henry Tallman pay to said Scott J. Tallman the sum of $9990, in manner following, viz., $490 in sixty days; $4750 in one year; and $4750 in two years, with interest on each of said sums from the date ” of the award, “ and pay to said Scott J. Tallman the costs of reference, taxed at $236.43.” And the arbitrators further awarded, “ that upon the payment of all the aforesaid sums by said Henry, as aforesaid, the said Scott J. Tallman, by his certain deed in writing, under his hand and seal, acquit, exonerate, and forever discharge the said Henry Tallman and the estate of the late Peleg Tallman, in said agreement mentioned, of and from all and every demand whatever.”
The case is submitted to the court, upon certain depositions and documents, or such parts thereof as are competent evidence, for the decision of three questions : 1st, Whether, upon the evidence, it is competent for a jury to find that the clause in the submission respecting the making of the award in duplicate, and furnishing each party with one part thereof, was complied with by the arbitrators. 2d, Whether the award is, on its face, a valid award. 3d, Whether the title to sue is in the plaintiff, or in his assignee in bankruptcy. In considering these questions, we prefer to reverse their order.
As to the third question, we are of opinion that the defendant entered into the submission in his individual capacity and not in his representative capacity, as executor of his father’s will. This we infer from the terms of the submission, and from the facts agreed in the case. It also appears from the probate record concerning the will, that the defendant was joint executor with his mother; that a letter testamentary was granted to them jointly; and that they both gave bond to the judge of probate for the due execution of their trust as executors. It also appears, in one of the depositions filed in the case, that the mother was alive when the submission was made. And if it was intended to be made by the defendant in his capacity as executor, so as to affect the administration of the testator’s estate, we suppose it would have been made by both executors. Besides ; the defendant, by submitting a claim against the testator’s estate, as estate in the course of *333 administration, would have rendered himself liable to perform the award, although the sum awarded against him might exceed the assets in his hands.
The claim of the plaintiff was manifestly a personal claim on the defendant; a claim which he had no legal power to enforce ; a claim which did not, and could not, pass to his assignee in bankruptcy. And so the arbitrators treated it, as the depositions in the case show. We therefore are of opinion that the title to sue on the award is in the plaintiff, and in him alone.
The next question is, whether the award is, on its face, valid. Several objections have been made to its validity.
1st. That the arbitrators awarded a round sum to be paid by the defendant, without distinguishing between the sum to be paid by him in his representative capacity, and the sum to be paid by him personally. This objection is necessarily overruled by the decision already made, that the submission was entered into by the defendant solely in his individual capacity.
2d. It is objected, that the arbitrators did not, in terms, say that they had determined all the matters submitted to them. But it is a settled doctrine, that courts will make no intendment for the purpose of overturning an award. And when all demands or all differences between the parties are submitted to arbitrators, courts will intend that the arbitrators have decided all matters submitted to them, unless the contrary appears ; and it is incumbent on the party, who seeks to impeach an award on the ground that all matters submitted are not decided, to show that there was some other matter in difference, which the arbitrators have not decided. Even though the arbitrators make an award on one matter only, when all matters in difference are submitted, the court will not intend that any thing further was in difference. Ingram v. Milnes, 8 East, 449; Karthaus v. Ferrer, 1 Pet. 222; Watson on Arb. 117, 118; 2 Greenl. on Ev. § 74. But there is, in the present case, more than the legal presumption that the arbitrators decided upon all matters submitted to them. In Mr. Fessenden’s deposition, he states that demands made by the *334 defendant on the plaintiff were presented to the arbitrators, and that “ there was a full hearing on all questions submitted, to which the parties wished the arbitrators to direct their attention.” And two of the arbitrators state, in their depositions, that they heard and investigated all claims and demands between the parties.
3d. It is objected that the award does not pursue the submission, as to the matter of the releases. The provision was, that they should “ fix the terms and times of payment, and the forms of all releases.” We do not understand that the arbitrators, by force of this provision, were bound to order releases to be made, at all events, any more than they were bound to order one of the parties, at all events, to pay money to the other. The arbitrators were first to decide whether either party was entitled to recover any sum of the other, and whether either party or both should give a release. After deciding these points, and determining that one should pay a certain sum to the other, and that one or each should execute a release, the arbitrators were to fix the terms and times of payment, and the forms of all releases which they should order to be made. On the award which was made, there was no necessity that the plaintiff should give any release to the defendant. By payment of the sum awarded, at the times prescribed, the defendant would have been discharged, by operation of law, from all claims of the plaintiff upon him. And by virtue of the award, the plaintiff is legally discharged from all the defendant’s claims on him. But the arbitrators saw fit to direct that the plaintiff, on receiving payment from the defendant, pursuant to the award, should by deed forever discharge the defendant and the estate of their father from all and every demand whatever. And we are of opinion that the arbitrators, in so doing, have pursued the submission, and sufficiently prescribed the form of the release which they directed to be given.
4th. The other objection to the award is, that it is bad as to the costs; that the arbitrators have not stated how much of the costs, which they taxed, were for their own services, and how much for other items. We see no force in this objection. The arbitrators were authorized, by the terms of the submis *335 sion, “ to award as to costs.” They have made their award in the usual form ; and we know no reason why they should state the items of cost on the face of it. The counsel for the defendant cited Robinson v. Henderson, 6 M. & S. 276, on this point. In that case, the arbitrators awarded that the sum of £230 8s. was due from the defendant to the plaintiff, and-that out of said sum the defendant should pay to the arbitrators £93 12s. for their services and for the charges of the plaintiff’s solicitors; leaving the sum of £136 15s. a balance, which t.hej awarded to be paid to the plaintiff. The award was set aside, because “ the court was of opinion that there would be danger in permitting arbitrators to award a definite sum, of which a part, including an indefinite allowance to themselves, was ordered to be paid to the arbitrators.” In the case at bar, the arbitrators did not award that the present defendant should pay any sum to them, as costs, but that he should pay a certain sum, as costs, to the present plaintiff. The two cases, therefore, have no resemblance, and the reason on which the one was decided does not exist in the other.
As to the remaining question, namely, whether it would be competent for a jury to find, upon the evidence, that the arbitrators made their award in duplicate, and furnished each party with one part thereof, we cannot entertain any doubt. We do not decide the question, whether the deposition of Mr. Randall, the attorney to whom the defendant showed the award, for the purpose of taking his opinion as to its validity, is admissible. We put the decision, on this point, upon other evidence, which, though slight, is clearly competent, and would warrant a jury in finding a compliance, by the arbitrators, with the provisions of the submission. The intrinsic probability that they did so is exceedingly strong, and there is no evidence which has any tendency to show the contrary.
The defendant is to be defaulted, and the plaintiff is to have judgment for the amount awarded by the arbitrators, including the costs of reference, and interest thereon from the date of the award, which was September 29th, 1845.